against SpeedyPC Software. And we will first hear from, do you pronounce your name Mr. Borsia? Borsia, okay, Mr. Borsia. Thank you, Your Honor. May it please the court, Jim Borsia for SpeedyPC Software. The district court in this case improperly certified a class based on claims that were never pled and were not pending and failed to conduct the rigorous analysis required that mandates in this case, your class certification be denied. The district court also ignored unrebutted evidence submitted by Speedy, including expert testimony that refuted plaintiff's claims and made it individual inquiries substantive liability issues that also make class treatment improper. True to the procedure here, the claims that were certified were never pled. But does that really matter? I mean, you know, pleadings get the ball rolling. I, of all the points you made, that one probably did the least for me. I think everyone understood what this case was about. Was this software really something that, you know, you did a Google search, you got directed to it, it automatically said your computer was in critical condition, it lured you into purchasing for some amount of money, 9.95, 39.95, whatever. And it didn't, in fact, fix. A, I suppose in some cases there was nothing to fix. Maybe in other cases, if there was something to fix, it didn't fix it. So that was what the complaint said. You knew that was what you were defending against. So, you know, you're free to pursue this a little further if you want to, but it seems to me this is really more about whether class certification was proper. I agree, Judge, but here's why it is important, is because we wouldn't be here right now had they pled that on those claims, and here's why. The claims that were pled were breach of contract claims under Illinois law. Well, but, and then I realize the law of British Columbia comes in at some point. Well, it didn't. Are you saying that breach of a warranty has nothing to do with a contract? No, I'm not saying it has nothing to do with it, but it's a different claim. Different claim, and here's one of the examples, and this is why it's important, is the EULA, which they claimed initially, wasn't part of their case. It wasn't part of their claims. They said their claims were based on Illinois law. And then they whipsawed us, and so now our claims are based on EULA and its BC law. The EULA that they now rely upon specifically disclaims implied warranties. It also says the software is sold as is. So if they had made that claim initially, those counts would have been dismissed. Instead, they said, no, our claim is based on Illinois law. The EULA's irrelevant. So that's how, and we brought a form of non-competence motion saying this case should be brought to British Columbia. They said, no, it's an Illinois-based claim. The British Columbia law is irrelevant. The EULA's irrelevant. It's not based on our claims. And that's how they got the certification. So if you get the certification, then why don't you just move to dismiss? Well, we were passed dismissal at that point. The pleadings were closed. We had already brought a motion to dismiss on other grounds because they hadn't announced that was their claim. And it was too late. Counsel, I share one of the concerns that Chief Judge Wood was raising here, which is this attack on certifying unpled claims and so on, seems to take a kind of linear lockstep approach to civil procedure when, in fact, the district judge has considerable flexibility to manage the case, to shape the claims, to modify the definition of a class in light of the arguments that are made to her. Well, I think that's right, Judge Breyer. I think also, in fairness, the defendant has to know what claim they're being brought against them. That's how discovery is shaped. That's how motions are shaped. That's how the Form 9 Convenience Motion was shaped. And to say now, at the certification, we're gonna radically change the claims and base it upon new laws, new claims, is unfair. Why don't you file a new motion then? Do you need some new discovery? What's that? Do you need some new discovery? Well, we may, but here's the point. Have you identified any? What's that? Have you identified any? No, we have not. Okay, there's not any big secret about what the dispute is about here, is there? Well, not about what the dispute's about, but about the claims, yes. But I'll get beyond this. So the issue in terms of what this case is about is, the plaintiff's claims in this case are twofold. One is the software does not adequately scan computers. And second, the software doesn't work. And I gathered from reading the briefs that they're making, that they assert, and they, you know, if this is right, that's one thing. And if it's not right, there's a merits victory for you somewhere. But they assert that regardless of the condition of the computer, the same message came up when you did the initial free scan, and the same software, no matter what kind of computer, no matter what, was sold. That's their allegation. So they say, so, ergo, common claims. And that's not true, because the only thing they support that with is their own plaintiff's testimony, and the expert didn't even look at the software, he looked at only the scanned version. But the problem here is, this software is not the same. First of all, the software was sold through many different retailers. Whatever message was being sent could have been sent by, we don't know when. Is the counsel on that point, is there evidence that different retailers were making different promises or assurances about the performance of the software? No, but there's no evidence they were making the same promises. And that's the point, is the plaintiff has the burden of proof. So the plaintiff, you know, that's, I don't understand why, at this point, we should worry about that issue if you haven't put on evidence of varying promises or assurances or advertising through those different channels. Wasn't our burden to do that. It was the plaintiff's burden. No, it's not. But if we're trying to decide whether a prejudicial mistake has been made, that's the kind of evidence that might show that it has. Well, I understand, but it was the plaintiff's burden to show the same message was given to every class member. And they've done it by the screenshots, or at least what they've proffered, I'll say, I'm not gonna prejudge anything, but what they've proffered are these screenshots that they have. Now, you pointed out a minute ago, and I think this is certainly something we'll explore with your opponents, that their expert looked only at the original free, quote, scan, whatever it was, and didn't then take the next step and analyze the purchased software, I'll call it. And as I understand, parenthetically, software is regarded as a good under the law of British Columbia. Yes. So we're confident of that. Okay, good. So that could be a problem if there are 19 different versions of the program. I certainly can understand that it might be a problem if some people just really need to defragment their disk and other people have malicious malware infecting their entire computer. Those are two different situations altogether. Correct, and here, again, the evidence that was submitted did not show uniformity. We submitted evidence of our people who said, here's a software being reviewed by third parties, independent, giving this software raving reviews. Here's independent consumer studies showing the software getting positive reviews. Here's an expert we hire. He comes in, he analyzes both the scan and the paper. But we don't resolve merits at class certification. I mean, it sounds to me like you have evidence that there were differences. At class certification, though, we need evidence. What's the common question or what are the common questions being asserted? Are they typical? And because it's a B3 class, do they predominate? Right, and here, the plaintiff, for example, I'll pick one of their claims is the warranty fitness for purpose. They have to show that the seller, whoever that seller is, knew the purpose for why the buyer was purchasing it and the buyer had a specific purpose and the purpose was not met. Why isn't the purpose obvious? You know, you do the first scan and the purpose is my computer isn't working. Please make it work. But the computer can have many different problems. Well, I know that. But it could, there's not just one. And actually, the plaintiff even said, there are 10 different things this software is supposed to do. And our expert analyzed them and says, it does all of them. The problem here is the plaintiff and you, the expert, cannot say for anybody else, this software didn't work. This software is worthless. Sounds like you want us to decide the merits on this appeal. No, what I'm saying is, it's not a proper class certification because they can't establish that customer B, who bought the software, had these issues. They couldn't establish why customer B bought the software. They couldn't establish why customer B had an issue or was deceived. They had their own theory, the plaintiff had, but they can't establish, in class certification, you'd have to analyze customer by customer. Why they bought the software? Did it work? We have these customer surveys. We have the expert report saying, the software does work. Suchanick, they said, is different. There was actually surveys and evidence submitted saying, this coffee is not what you represent it to be. They don't have that here. In fact, their expert didn't even analyze the software at issue. He analyzed the scan. So we had evidence submitted in the record, the surveys by independent third parties, the expert, and the district court ignored it all. The district court simply cited the plaintiff's complaint and the plaintiff's testimony. So here we have a situation where you cannot decide this case on a class basis. You're going to have to do individual inquiries with each customer as to why they bought it, who they bought it from, what they were promised, what they relied upon, what they paid, were they damaged, were they deceived, did the software work? If it didn't work, how much did it work or not work? That's all individual inquiries. So the merits are relevant here because the merits tell you what a disaster this would be to try this case on a class basis. It couldn't be done. Their suggestion is, well, let's just do that for now. Mr. Borsha, let me ask you to turn to the national class that was certified. You've raised in your appellate briefing the issue of personal jurisdiction in light of the Supreme Court's decision last year out of California. Yeah, Bristol Myers, thanks. As I understand it, you asserted lack of personal jurisdiction as a defense in your answer. Is that right? Correct. Was personal jurisdiction part of the briefing on the class issue? It was not, Judge. Okay. So, and getting beyond, and that's because it really became more relevant with Bristol Myers, that decision. But that's why it was not. But I just want to emphasize that in terms of the issue here, in terms of this case, unlike Suchanick, where plaintiffs claims were found to be not idiosyncratic, this plaintiff's claims are idiosyncratic. Maybe you want to stop there and save a little rebuttal time. Thank you, Judge. We'll hear from Mr. Lawson. Good morning, your honors. Aaron Lawson on behalf of the certified class. Let me begin by talking about the expert report, because it seems like that's a reason. I think that's important. I mean, I'm very troubled that your expert didn't look, it didn't look, period, as far as I can tell, the details of the purchased software. I don't see what the harm is in the free initial scan, other than making you feel spooked that your computer's not working. But he didn't look at the purchased software. And as I said, I pose just two different possibilities. Somebody might have a computer that's working perfectly, and they might have been lulled into thinking they needed this software. In that case, if the software wasn't doing anything, they've been ripped off from the 40 bucks or so that they paid, but that's it. Some people might have just needed to defragment a disk and not know how to do it. Not everybody's a computer whiz. Some people may have had real serious problems with their computers, and there are reputable programs out there that fix them, but the allegation is this isn't one of them. But your expert didn't analyze what was being sold. So the scanning portion of the software is identical between the free trial and the purchase. Right, and I'm saying, but that's the minimal harm. If there is any harm at all, other than just psychological angst. Sure, well, so there's no real magic that happens afterwards in this sort of the repair portion of the software. It's either going to be deleting the problems it's found or not touching them. Well, but you allege that, but we don't know what this software does. We don't have expert testimony in the record, and at least in the post-Walmart against Dukes era, you can't get a B3 class certified without factual underpinnings to show, yes, there really are common questions. Yes, they are going to predominate. We don't want to have to look at 500,000 different computers in the United States. Well, I think Mr. Myers' report actually gets into this, and he's talking about, when he's discussing how this software is just performing a high-level review and sort of picking off the problems that it finds, and there's no indication that it's doing anything with the problems that the scanning portion finds once you've purchased the software. It's just sort of deleting them, quarantining them, leaving them alone. It's not doing anything, and that's why- Those are all meaningful actions, deleting and quarantining. Why is that silly? So it matters, I think, that what the scanning portion of the software finds is usually worthless, basically. It's programmed to look for very benign things, and in some cases, actually things that are required for the computer to operate properly. So deleting or quarantining those things is actually pretty harmful in and of itself. I think that's why the software leaves most of them alone, but all the real work is done by the scanning portion, determining what kinds of so-called privacy problems you have or what privacy items, junk files, performance problems, all of this stuff. I mean, that's really where the software is doing its work, and there's not, it's really sort of- That's what makes it so important and what troubles me. What is our class certification record on the question whether the software operated in the same way across all devices, across all different kinds of problems that those devices might have had? So Mr. Couchman, this is Exhibit 3, Patrick Couchman's deposition, he concedes that the quote-unquote functionality is identical across operating systems and computers. Now, these are only gonna be Windows computers, so across different types of brands and whatnot. Mr. Sneed also, he puts this in a footnote. He talks about there's only been two significant changes, or two really meaningful changes in the versions of the software that we're talking about, but they're not changes that would have had any effect on functionality. And he agrees that this is not a software that's able to distinguish between different types of computers, so it's functioning the same across them. I think Mr. Myers also sort of implicitly- But if it's all PCs, then why is that a problem? I'm sorry, I missed the beginning of your question. The fact that the software isn't distinguishing among computers, I suppose that means which version of Windows are you running? Right, exactly. And are you, you know, did you buy a Dell or did you buy something else? HP, why would those differences matter? Right, well they wouldn't, and that's why the software wasn't programmed  It was simply programmed to look for certain types of files most of which are not harmful. Many of them are benign, many of them are actually necessary to the functioning of the computer and to let you know that because you have those files, your computer's in critical condition and in serious need of help. And you weren't gonna get that help from this software. And that's been the claim the whole time. I think the record, you know, at class certification as we understood it, you know, Mr. Sneed was tasked with really showing this was classable, that, you know, we have the same software, everyone saw the same things. Everyone stood in the same relationship with Speedy PC software. And those showings were made. And that's, so that's the common conduct. And it gives rise to all of the common questions that we have here. And I think the district court correctly concluded. But without an examination of what the purchased software, which is what I wanna call it, did, I don't see how we have any factual basis to know whether Mr. Beaton's claim was typical of the claims of other people, whether there is in fact a common performance. I mean, maybe it just does some very modest things. And for people with modest problems, they're perfectly happy with it. But it doesn't do more sophisticated things. I mean, this is all complete speculation in my mind. Well, as we see it, those are, because we know that the software is going to function identically on every computer it's downloaded on. What it does in the end, I think, is a merits question. And that goes to, you know, the value of what people actually received. If it's actually doing beneficial things, then, and this is what Mr. Myers' report is all about, if it's actually doing beneficial things, then, you know, we'll lose. I mean, that's sort of the end of the ballgame for us. But if it's not, and that's what we'll show at summary judgment, that it's really not, it's doing stuff that basically has no relevance to the kinds of issues that would, you know, prompt the Google search that turns us off. But you didn't put in any evidence, I mean, again, I'm just guessing. Is it clearing caches? Is it defragmenting? Is it getting rid of cookies? I mean, you know, what's it doing? Cookies is one of the things that it's doing. I mean, we can get into it. You know, it's programmed to look for very specific type of files. You saw some of this in the expert reports and in Mr. Couchman's deposition, things like log files and backup files, which are generated in the, you know, the ordinary functioning of a computer. It looks for certain registry keys, you know, and registry keys that are going to be on every single Microsoft computer. And, you know, part of our contention is that the reason that this software is programmed to look for these things is because it's guaranteed to find them, and in pretty significant quantities. And that's why everyone is, you know, shown that their computer's in critical condition. It looks for- Well, that strikes me as the kind of thing under your other class, your Illinois consumer fraud class, if you tell everybody, without regard to their individual circumstances, that their computer is in critical condition, maybe there's a problem there under the consumer fraud statute. I'm not sure that goes to the national class, but you might have something there. Well, it's not doing some of these things that you've sort of posited. It's not defragging. It's not really clearing cash. It's really just looking for the kinds of files that are generated in the ordinary functioning of any computer and telling you that you need the software in order to get rid of these files. And neither do you need the software, nor do you need to get rid of the files. Frequently, they serve a pretty important purpose. And that's what we intend to show at summary judgment. We think that the record here allowed the district judge to conclude, without abusing her discretion, that we have common predominating questions related to the functioning of the software, the value of the software, and we can proceed to adjudicate those at summary judgment on a class basis. Can I ask you to address the question about personal jurisdiction in the national class? Yeah. I understood you to be arguing, but perhaps I was wrong, that somehow that issue was gone from this case. Well, I do think it has been forfeited, if not waived. Our allegation... Forfeited how? Well, so the allegation that the district court had personal jurisdiction over Speedy PC was denied, but that was the end of the matter so far as things were concerned in the district court. There was no motion to dismiss for lack of personal jurisdiction. There's no final judgment at this point. There's not an obligation to file a motion to dismiss for lack of personal jurisdiction. So I would think that that issue would remain open in whatever form this case goes forward at the district court. Well, I personally would hope not, but so I do understand your point that... Why would that not be the case? Well, we were given... You were never put on notice that this was going to be an issue, and the cases say you have to at least put the plaintiff on notice that you're going to contest it. If you give the plaintiff... There's an answer that denies it. There are plenty of cases, though, where the simple denial and the complaint, when it's not followed by a motion. Defendants that want to contest personal jurisdiction often say it at the beginning of depositions, put it in all of their motions. Often, yes, but where's the waiver? Well, that's what I would rest on as far as waiver. If we disagree, then... So let me ask you this about personal jurisdiction. To the extent we're talking about a class action, we are beyond the factual setting of Bristol-Myers Squibb against Superior Court, because that was just a specific jurisdiction case dealing with a particular plaintiff and a particular defendant, and there is law that exists in a class action area, and it's very unusual to find a defendant in a class action. If you go to Phillips Petroleum against Schutz, you at least find links between the unnamed members of the plaintiff's class. I would just say that the question of personal jurisdiction in this kind of situation is a complex one, and that, as I understand, was never briefed, even though Bristol-Myers Squibb was pending during most of this proceeding. Yeah, right, it was available to be briefed. It just hasn't been addressed here. It just hasn't been addressed in this case yet. It has not been raised by the defendant yet. So I would say, I do think the distinction between the class action and the mass action context is there's at least something there, because in the mass action context, every plaintiff has to be before the court, and I understand sort of the interplay between Phillips Petroleum and Bristol-Myers to be that if the named plaintiff can hail the defendant into the forum, they can represent a class of everyone they can adequately and typically represent. I mean, this gets us into the whole personal jurisdiction question, also with respect to internet sales, which we have seen certain examples of over the years. Could I ask you about one other question, Mr. Lawson, and that is the theory that the product was unfit for a particular purpose. How, that at least seems a little jarring to me in terms of a class-based claim to the extent we're worried about different customers' particular purposes. Right, I understand your concerns. I think it's important that the law we're working with here specifically allows you to show that you've communicated that purpose by implication, and I think the evidence of that implication. So you're talking about a particular purpose communicated by the defendant, not an individual customer's particular purpose. Well, there are cases that, you know, in circumstances in which, like we think we have here, a product is meant to serve one purpose, and it's aggressively marketed for that purpose, the action of the plaintiff in purchasing the product is held to show by implication that they need it for that purpose. And that's the theory that we would proceed on. I think that is one that applies across the class. The theory does present common questions. If we later, you know, if a fact finder, if the judge at summary judgment determines that, you know, as a matter of fact, our evidence of this implication is just insufficient, we'll have to revisit that. But I think that for the moment, at least, there is sufficient evidence to conclude that there are common questions on that theory. And if there are no further questions, I'll see the remainder of my time. Judge Sykes, any questions for Mr. Lawson? No, thank you, Chief. All right, thank you very much. Anything further, Mr. Borshin? Counsel mentioned there was one purpose for the software. Their own complaint says there's 10 purposes. So that's not correct in terms of what their own allegation is. But the fact is this software was not just for one purpose. It was for many different things that could be happening with your computer. Any one or more of which could have been why the plaintiffs or the class members purchased the software. In terms of the issue of the scan counsel talked about, Mr. Meyer's report, which again doesn't get contradicted, is this scan does not just say everybody's computer is critical or in bad shape. It does not do that. In fact, many of the tests that he ran show the computers being in good shape, even with the scan being run. So that misrepresents what the evidence is in the record. In terms of the issue of the software across, and you brought this out, is there's no evidence that says this software was the same for each of these customers. There's no evidence of that. And the fact that they were not doing even the analysis of the software at issue tells you they don't have a basis to say that. Now, you put in evidence that there were 19 different versions. Is that correct? Yes, Mr. Dodd's affidavit talks about, and actually not just the different versions. He actually talks about how some of them were different. How they differ from one another. Correct, correct. But the issue here, Judge, is that counsel wants to say the software does nothing. Then why did they get reviewed independently and say the software got five stars on two cows? Why were these customers coming back saying, this software worked for me? Obviously, the software wasn't guaranteed to work for everybody. And that's why we offered and guaranteed a 30-day money-back guarantee. If you get the software, you don't like it, you get your money back. The problem here is the point of waiting nine months to get his money back, that's too late. But the software did work for some. It didn't work for Mr. Beaton, obviously. He's saying it made my computer worse. The problem he has is to establish a class. He has to be able to establish it worked the same for everybody. He can't and hasn't done that. And what the suggestion is, and even the district court said this, and they say this, is let's have affidavits come in and attest to what happened. Let's, on these individuals, let's have affidavits. I think you're overstating what she thought the affidavits would do. I thought it was a pretty modest suggestion for affidavits where there were just some binary issues. Well, it's not minor in terms of some of these, what was that, one or two? Binary, like yes or no. Yeah, so one issue, judges, for example, is was the software bought for business or personal use? Right, yeah, so business, personal. That's not binary because even the plaintiff's evidence in this case shows the contested evidence on that issue. The plaintiff's saying I used it for both. The plaintiff's saying some for my refereeing, some for my business. So that is not just saying yes or no, and we have a right to contest that. You do, and it's perfectly ordinary in managing consumer class actions to say that a lot of issues will be addressed at first with affidavits, and then if you want to contest them, you have the right to do that. Problem here is, though, that there's gonna be individual need to get into these in terms of what these people did with their computer, what they bought it for, how it worked. That can't be done by affidavit. And now we're getting into. So you can call them in if you want to. I mean, this is the kind of bluff that defendants use in consumer class actions all the time to make them sound impossible. But the problem with that. And they're not. But the problem with that, judges, in this case is, are we gonna call in 20,000, 30,000, 500,000 people? You can get started if you need to. But that's not the purpose of class action. The class action purpose is for the individual plaintiff to establish their claim. Mr. Borsha, you're not gonna proceed on the basis that people are just flat out lying in their affidavits. If they say, I bought it for my business, I bought it, maybe it's a three-part question. I bought it for business, I bought it for personal, I have a mixed use. You know, many people, such as almost anyone who works for an employer, have a work computer and they have their own personal home computer. They don't run their own business. It's gonna be very straightforward a lot of the time. I would think defendants focus in on the ones that look like maybe there's something in between. But the problem with this is, judges, we cannot examine an affidavit and we would need individual proof. And the plaintiff's own claim here proves it. The plaintiff's own claim says, it didn't work for me. And we have contrary evidence, which the district court never even addressed, that says, it does work. And so you don't want, actually, a ruling from the district court that just, across the board, exonerates your company, which is what you would get if the class were certified. The problem is, we can't because of the binding nature of class actions. And the problem is, the plaintiff's testimony is the opposite. So there's no uniformity here. That's the problem. You just don't want the trial. Correct. Yeah, okay. All right, thank you very much. Thank you, Your Honors. Thanks to both counsel. We'll take the case under advisement.